## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| JESSE McGRAW, an inmate as an individual and PAUL MARONE, an inmate as an individual, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Plaintiffs, | |
| v. | |
| EDDIE MEJIA, Warden, Federal Correctional Institution, Seagoville; B. BLANKENSEE, Associate Warden; LT. DOE GENTRY, Officer; LT. DOE SHANNON, Officer; LT. DOE WIGGINTON, Officer; DOE SMITH, Officer; P. ANTHONY, Officer; DOE HOFFMAN, Officer; and DOE THURNSTON, Officer; Lt. WILSON Officer; and M. CRUZ, former Warden, all the above defendants are sued in their individual capacities. | |
| Defendants. | |

CASE NO. _____

**CIVIL COMPLAINT for:**

**(1) Violations of Plaintiffs' Constitutional Rights under the FIFTH, SIXTH and EIGHTH Amendments and for,**

**(2) CONSPIRACY to violate those Constitutional Rights and,**

**(3) FOR FALSE IMPRISONMENT AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS UNDER TEXAS LAW**

**Demand for Jury Trial**

## I.

## PARTIES

1. Plaintiff JESSE McGRAW, (Register # 38690-177), an inmate, sues as an individual presently in the Special Housing Unit ("SHU") and in the custody of the United States Bureau of Prisons, at the Federal Correctional Institution, ("FCI") at Seagoville, Texas.

2. Plaintiff, PAUL MARONE, (Register # 33072-068), an inmate, sues as an individual presently in the Special Housing Unit ("SHU") and in the custody of the United States Bureau of Prisons.

3. Defendant EDDIE MEJIA, present Warden of the FCI, Seagoville, an officer of the

United States of America, is sued in his individual capacity, and may be served by serving the United States through delivering a copy of the summons and of the complaint to the United States Attorney for the Northern District of Texas, Dallas Division, by sending a copy of the summons and of the complaint by registered mail to the Attorney General of the United States and by serving defendant by delivering a copy of each to an agent authorized by law to receive service of process at the FCI located at 2113 North Highway 175, Seagoville, Texas 75159.

4.   Defendant BARBARA BLANKENSEE, Associate Warden of the FCI, Seagoville, an officer of the United States of America, is sued in her individual capacity, and may be served by serving the United States through delivering a copy of the summons and of the complaint to the United States for the Northern District of Texas, Dallas Division, by sending a copy of the summons and of the complaint by registered mail to the Attorney General of the United States and by serving the defendant by delivering a copy of each to an agent authorized by law to receive service of process at the FCI located at 2113 North Highway 175, Seagoville, Texas 75159.

5.   Defendant DOE LT. GENTRY, an officer of the United States of America and a Lieutenant working for the Special Investigation Service (SIS), FCI Seagoville, is sued in his individual capacity and may be served by serving the United States of America through delivering a copy of the summons and of the complaint to the United States Attorney for the Northern District of Texas, Dallas Division, by sending a copy of the summons and of the complaint by registered mail to the Attorney General of the United States and by serving defendant by delivering a copy of each to an agent authorized by law to receive service of process at the FCI Seagoville located at 2113 North Highway 175, Seagoville, Texas 75159.

6.   Defendant DOE SHANNON, an officer of the United States of America and a Lieutenant

working for the Special Investigation Service (SIS), is sued in his individual capacity and may be served by serving the United States of America through delivering a copy of the summons and of the complaint to the United States Attorney for the Northern District of Texas, Dallas Division, by sending a copy of the summons and of the complaint by registered mail to the Attorney General of the United States and by serving the defendant by delivering a copy of each to an agent authorized by law to receive service of process at the FCI Seagoville located at 2113 North Highway 175, Seagoville, Texas 75159.

7.   Defendant DOE SMITH, an officer of the United States of America, a Case Manager, is sued in his individual capacity and may be served by serving the United States of America through delivering a copy of the summons and of the complaint to the United States Attorney for the Northern District of Texas, Dallas Division, by sending a copy of the summons and of the complaint by registered mail to the Attorney General of the United States and by serving the defendant by delivering a copy of each to an agent authorized by law to receive service of process at the FCI Seagoville located at 2113 North Highway 175, Seagoville, Texas 75159.

8.   Defendant Patricia ANTHONY, an officer of the United States of America and a Unit Manager, is sued in her individual capacity and may be served by serving the United States of America through delivering a copy of the summons and of the complaint to the United States Attorney for the Northern District of Texas, Dallas Division, by sending a copy of the summons and of the complaint by registered mail to the Attorney General of the United States and by serving the defendant by delivering a copy of each to an agent authorized by law to receive service of process at the FCI Seagoville located at 2113 North Highway 175, Seagoville, Texas 75159.

9.   Defendant DOE HOFFMAN, an officer of the United States of America and Case

Manager, is sued in his individual capacity and may be served by serving the United States of America through delivering a copy of the summons and of the complaint to the United States Attorney for the Northern District of Texas, Dallas Division, by sending a copy of the summons and of the complaint to the Attorney General of the United States and by serving the defendant by delivering a copy of each to an agent authorized by law to receive service of process at the FCI Seagoville located at 2113 North Highway 175, Seagoville, Texas 75159.

10. Defendant DOE THURNSTON, an officer of the United States of America and Counselor, is sued in his individual capacity and may be served by serving the United States of America through delivering a copy of the summons and of the complaint to the United States Attorney for the Northern District of Texas, Dallas Division, by sending a copy of the summons and of the complaint to the Attorney General of the United States by registered mail and by serving the defendant by delivering a copy of each to an agent authorized by law to receive service of process at the FCI Seagoville located at 2113 North Highway 175, Seagoville, Texas 75159.

11. Defendant DOE WILSON, an officer of the United States of America and a Lieutenant working in the Special Investigations Service (SIS), is sued in his individual capacity and may be served by serving the United States of America through delivering a copy of the summons and of the complaint to the United States Attorney for the Northern District of Texas, Dallas Division, by sending a copy of the summons and of the complaint to the Attorney General of the United States by registered mail and by serving the defendant by delivering a copy of each to an agent authorized by law to receive service of process at the FCI Seagoville located at 2113 North Highway 175, Seagoville, Texas 75159.

12. Defendant Doe WIGGINTON, an officer of the United States of America and a

4

Lieutenant working in the Special Investigations Service (SIS), is sued in his individual capacity and may be served by serving the United States of America through delivering a copy of the summons and of the complaint to the United States Attorney for the Northern District of Texas, Dallas Division, by sending a copy of the summons and of the complaint to the Attorney General of the United States by registered mail and by serving the defendant by delivering a copy of each to an agent authorized by law to receive service of process at the FCI Seagoville located at 2113 North Highway 175, Seagoville, Texas 75159.

13. Defendant MAUREEN CRUZ, an officer of the United States of America and former Warden at the FCI Seagoville, is sued in her individual capacity and may be served by serving the United States of America through delivering a copy of the summons and of the complaint to the United States Attorney for the Northern District of Texas, Dallas Division, by sending a copy of the summons and of the complaint by registered mail to the Attorney General of the United States and by serving the defendant by delivering a copy of each to an agent authorized by law to receive service of process at her new place of of employment within the Bureau of Prisons.

## II.

### JURISDICTION
### [Federal Question Jurisdiction]

14. This Court has original jurisdiction over this lawsuit under Title 28 United States Code Section 1331 and because the suit arises under the Fifth, Sixth and Eighth Amendments to the United States Constitution and under federal statutes under the Code of Federal Regulations. It is also brought as a *Bivens* action, *Bivens v Six Unknown Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971)*.

## III.

### VENUE

5

15. Venue is proper in this district under 28 United States Code Section 1391(b)(1) and (2) as all defendants reside within this district and all events took place in this district.

IV.

## FACTS
### [As they relate to Plaintiff McGraw]

16. Plaintiff Jesse McGraw is an individual, and presently an inmate, who was prosecuted in the United States District Court for the Northern District of Texas -- arrested on June 26, 2009 -- for violations 18 USC 1030(a)(5)(A) and 1030(c)(4)(B)(iv), for causing the Transmission of a Malicious Code, Computer Program, Code or Command.

17. Plaintiff McGraw entered guilty pleas on May 14, 2010, and was sentenced on March 17, 2011, to the custody of the United States Attorney General to 110-months. Plaintiff was then transferred to the Federal Correctional Institution, at Seagoville, Texas, where he has remained in Segregation until this date.

18. Plaintiff had been in general population since his arrival to FCI Seagoville on or about June 29, 2009, and had remained prison law abiding.

19. In or about January 31, 2012, plaintiff received a 'lock up order' signed by Lieutenant Wigginton claiming that plaintiff had violated prison regulations by borrowing another inmate's PAC# to use the other inmate's TRULINCS/email account for his own benefit, and as a result, plaintiff had *"posed a security risk to the orderly running of the institution.'* He was immediately placed in Administrative Detention. Plaintiff immediately admitted the violation.

20. This 'lock up order' arose as a result of the use of this TRULINCS/e-mail account of another inmate when the prison staff found out that plaintiff had violated prison regulations. This incident caused plaintiff to be placed in Administrative Detention.

21. The summary of the charges was later described in the Discipline Hearing Officer's

Report as "*Offense Code 299 most like 296, conduct which disrupts most like use of the mail for abuses other than criminal activity," (sic).*

22. Advanced written notice of the charge – a copy of the Incident Report – was given by defendants to plaintiff on September 27, 2012, some ***eight (8) months after the incident.*** This Incident Report must be given to the inmate within 24-hours of the incident, excluding holidays and weekends.

23. The Disciplinary Hearing was held on October 4, 2012.

24. The documentary evidence that was reviewed by the hearing officer consisted of "*an investigative report, an investigator interview, an electronic messaging body report, a 'trueview' record, an investigator's memorandum, and FBI referral and declination report,*" meaning that arguably the FBI reviewed this matter and declined it. ***This investigation took nine (9) months to complete while plaintiff remained in Administrative Detention.***

25. The findings of the Discipline Hearing Officer were that the original charge was adjusted to *299 most like a 297 Code,* which normally brings a discipline of 6-months in Administrative Segregation.

26. The hearing officer found that "*the investigation was approved by executive staff on September 25[th] to forward to the writer [T. D. Gilbreath]. Due to an administrative issue the report was not completed until September 27[th]. **This delay was unavoidable and did not impact your due process rights negatively or cause (sic) hardship. Your UDC hearing was held within the guidelines and you were afforded all rights in proceeding to your DHO hearing.**"

27. Plaintiff was then sanctioned as follows: ***"gct-27 days; d/s-30-days; commissary, telephone and visiting restrictions – 120 days."***

28. This report was delivered to plaintiff on November 15, 2012, by W. Witcher.

29. As of the writing of this civil complaint plaintiff is still in Administrative Segregation.

30. Plaintiff requested from specific defendants – who comprise the Executive Staff and who approved the lengthy investigation - to explain to him the reasons for such a long administrative detention, only to be told that the matter had been turned over to the FBI for investigation and that it was up to the FBI to decide how long it would be.

31. For over eight (8) months the executive staff told plaintiff that the FBI was investigating his matter and that FBI agents were coming over to interview him about it. The agents never came.

32. Plaintiff made every attempt to exhaust his administrative remedies by requesting that he be provided with BOP Forms to accomplish it at every stage of the administrative proceedings, however, these attempts were always frustrated by all defendants herein by not providing the required forms, like BP 8s and 9s.

33. Plaintiff McGraw herein attaches a list of dates, prison officials and others, and their responses to these requests. See, ***ATTACHMENT*** to this complaint.

34. Plaintiff herein alleges that he was prevented from exhausting his administrative remedies by acts of all defendants and others not yet named.

35. At one point defendants working for SIS told plaintiff that ***"his confinement was because of who you are … and what are capable of …"*** and not because of the reason for the "lock-up order."

36. And when plaintiff approached defendant Lt. Shannon with the above statements, the defendant stated that it did not matter and that *"we go only by who you are …"* and not the reason for the detention.

37. Plaintiff further alleges that defendant Warden and Associate Warden, all four

8

Lieutenant-defendants working for SIS, defendants Unit Managers, Case Managers and Counselors, were all aiding and abetting each other to violate plaintiff's constitutional rights, statutory rights and prison regulation rights.

38. Plaintiff additionally alleges that all defendants willfully detained the plaintiff when they falsely claimed that the lengthy detention was due to FBI investigations, and that this unauthorized detention was against his consent, as the period of detention was extended maliciously and in violation of his due process rights.

39. Plaintiff alleges that all named defendants, and others unnamed, had no legal authority or justification to detain him in Administrative Detention for any period not justified by the United States Constitution and its Due Process Clause, and by statutory law and BOP Program Statements and prison lawful procedures.

40. Plaintiff further alleges that a 8-9 month Administrative Detention cannot be justified under any Due Process Clause, Statutory Law, Statutory Regulation and/or BOP Program Statements, especially when the alleged prison violation was not a prosecutable federal crime.

41. Plaintiff further alleges that during his administrative detention from January 31, 2012, to October 4, 2012, he was subjected to constant verbal abuse, retaliatory conduct, physical injuries, exposure to led paint, contaminated meals, lack of basic medical care, emotional injuries, near-lethal heat conditions up to 125 degrees in the Texas Summer, breathing of poisonous led paint, tape-worms in meals, dirty water, and deprivation of due process by the named defendants via the prevention and/or obstruction of administrative rights.

42. These acts by defendants caused plaintiff to dehydrate and to starve, caused mental breakdowns, visual hallucinations, losses of memory, mental depression, and suicidal ideation accompanied by physical injuries.

43. Plaintiff alleges that defendants' conduct was extreme and outrageous and proximately caused the severe emotional distress outlined above.

44. Plaintiff also alleges that defendants have caused permanent emotional and physical scars on plaintiff.

45. Plaintiff alleges that defendants attempted and succeeded in preventing plaintiff McGraw from having legal visits by his present attorney at the institution and that all acted in concert and aided and abetted each other in each and all due process vilolations.

## V.

### ADDITIONAL FACTS
### [As they relate to Plaintiff Marone]

Plaintiff MARONE herein re-alleges and incorporates by reference all of the allegations contained in paragraphs 1 through 44 above as if fully stated herein.

46. Plaintiff Paul Marone is an individual, and an inmate, who was prosecuted in the United States District Court for the Western District of Michigan – arrested on August 3, 2011 – for violation of 18 USC 2423(b), coercion and enticement of a minor female.

47. Plaintiff Marone entered a guilty plea to the charge on December 7, 2011, and was sentenced on March 26, 2011, to 3 years in the custody of the United States Attorney General.

48. Plaintiff Marone self-surrendered to the Federal Correctional Institution at Seagoville, Texas, on June 5, 2012, and remained in general population until his detention by prison officials.

49. In or about September 20, 2012, the staff at the FCI, Seagoville, became aware that plaintiff Marone had used the prison telephones to communicate with the "victim" in his underlying criminal case, contrary to the court's order not to communicate with her, on September 19, 2012, and he was immediately placed in administrative detention.

10

50. Plaintiff Marone was not given a timely "lock-up order," as required by law, within the required 24-hours, or within a reasonable time thereafter.

51. In or about October 1, 2012, plaintiff Marone asked defendant Lt. Shannon if he could have his "lock-up order," as required by law and the Lt. told him that he would receive it the following day, but plaintiff never received it from defendant Shannon or any prison officer.

52. Then on October 1, 2012, plaintiff sent a request for a BOP Form to request medical care and it was not provided to him.

53. Again on November 6, 2012, this plaintiff requested that he be provided with a BOP BP-8 and BP-9 forms to exhaust administrative remedies but he was ignored by defendants, ridiculed by them and the forms were never provided to him.

54. Again on November 21, 2012, plaintiff was evaluated by Dr. Jaffy, a prison psychologist, on the request of his attorney, as his attorney felt that plaintiff would harm himself while in detention.

55. This psychologist wrote an untruth on his report by claiming, contrary to this plaintiff's mental condition, that plaintiff was not depressed.

56. In or about December 12, 2012, plaintiff requested from Case Manager Martinez that he be provided with the necessary forms to exhaust administrative remedies, but Mr. Martinez never provided them to him.

57. In or about December 31, 2012, and January 2, 2013, plaintiff requested telephone calls to his attorney but was denied.

58. Plaintiff then requested legal telephone calls from defendant Case Manager Hoffman, who refused to provided plaintiff access to his attorney. Instead, defendant Hoffman attempted to extract information from plaintiff and discouraged plaintiff from obtaining legal assistance.

11

59. Plaintiff's legal mail has also been delayed up to 10 days from delivery to the institution, when normally it only takes one day from delivery.

60. Plaintiff's mail from his family has also been delayed for 10-days from delivery, and his social visiting restricted contrary to prison rules.

61. It was not until January 16, 2013, that plaintiff Marone received a copy of the Incident Report, or 'lock-up order.' *This was some four (4) months after he was placed in administrative detention.* It should be noted that plaintiff immediately admitted the violations and as a result, it simplified the investigation.

62. Plaintiff requested that he be provided with a copy of the Administrative Detention Order and defendant Lt. Shannon provided him with one on January 4, 2013, that was backdated.

63. However, this order untruthfully stated that plaintiff had been provided with one on September 20, 2012.

64. Plaintiff was given a Notice of Disciplinary Hearing on January 23, 2013, but one that did not include the hearing date.

65. Plaintiff has asked all of the defendants, and others unnamed, to provide him with the required forms to exhaust administrative remedies but he has been denied access to them.

66. Plaintiff was informed that the reason for his long delay in administrative detention was because the matter was under FBI investigation and that FBI agents would be arriving soon to question him about his prison violation. The agents never came to question him.

67. Plaintiff has tried to exhaust his administrative remedies but has been prevented by defendants to do so, by a series of denials and non-responses, causing plaintiff to miss required deadlines.

68. The United States District Court who sentenced him was aware that plaintiff was

12

emotionally and mentally handicapped and that he has been diagnosed with a combination of depressive symptoms and an Attention Deficit Hyperactivity Disorder.

69. Plaintiff alleges that these symptoms can be exacerbated by prolong physical isolation and family contact deprivation and alleges that all defendants knew of his emotional handicaps and were totally and deliberately indifferent to them and continued to keep plaintiff in Administrative Detention by unjustified allegations for an unjustified extended period of time.

70. Plaintiff alleges that throughout his Administrative Detention he was informed by all defendants, and others unnamed, that the only reason why he was kept in Administrative Detention was because he was under FBI investigation and that FBI agents would soon arrive to question him about the incident giving rise to his detention.

71. Plaintiff alleges that this FBI investigation was an excuse to keep him in detention and that there was never any intention by agents of the FBI to come to question him.

72. Plaintiff alleges that this detention was unjustified under the Due process Clause, statutory and regulatory laws and prison regulations.

73. Plaintiff alleges that he did not consent to the unjustified portion of his detention.

74. Plaintiff alleges that defendants had no legal authority or justification to detain plaintiff beyond the lawful time provided by the United States Constitution and laws of the United States.

75. Plaintiff further alleges that defendants' wrongful acts and conduct caused plaintiff physical and mental damages as defendants knew and/or were deliberately indifferent to his mental handicap and, furthermore, knew that the extended unlawful detention was not legally justified.

76. Plaintiff further alleges that defendants' conduct was extreme and outrageous.

77. Plaintiff also alleges that defendants' conduct proximately caused severe emotional

13

distress to plaintiff.

78. Plaintiff further alleges that defendants, and others unnamed, knew the district court who sentenced plaintiff had recommended that plaintiff, (1) be designated to a medical facility within the jurisdiction of the BOP, (2) that he receive sex offender therapy, and (3) that he receive a 'cognitive deficits evaluation.' All defendants deliberately ignored the recommendation.

79. Plaintiff alleges that these recommendations were designed by the Judiciary Branch of the United States Government to warn defendants of mental deficiencies for plaintiff to be placed in a medical facility, and not in a regular prison setting like the FCI, Seagoville, and defendants intentionally disregarded these recommendations.

80. Plaintiff now alleges that he was not mentally prepared to be housed in a non-medical facility and that his continuing illegal and unjustified detention in Administrative Detention has caused additional mental harm to him.

81. Since plaintiff was placed in Administrative Detention on September 20, 2012, he has been mentally abused by defendants, he has been retaliated against by refusing his requests to exhaust his administrative remedies, he was specifically ridiculed by defendant Associate Warden Blankensee, and defendants, and told that plaintiff's attorney can not assist him, that his attorney will not succeed in going against defendants and that no attorney will succeed in going against the FCI Seagoville.

82. Plaintiff alleges that defendant Hoffman pressured plaintiff to disclose to him personal and legal information on the pretext that it was just going to be for Hoffman's personal use.

83. Plaintiff alleges defendants know that plaintiff is mentally handicapped and they continue to abuse that mental disability and to totally ignore the effects that this unjustified lengthy and unlawful administrative detention is having and will have on plaintiff.

14

84. Plaintiff also alleges that defendants have failed to follow all administrative procedures to make sure that plaintiff's physical and mental care be provided.

85. Defendants know that a lengthy administrative detention and segregation will have lasting mental consequences on plaintiff and they are and were deliberately indifferent to it.

86. Plaintiff alleges that defendant Unit Manager Patricia Anthony attempted to prevent plaintiff's attorney from having any legal physical contact visits with plaintiff and by demanding that any future legal visits be carried out via the television monitoring system.

## VI.

### FIRST CLAIM FOR RELIEF
### [Fifth Amendment "Due Process" Violations]

Plaintiffs herein incorporate by reference and herein re-allege all of the allegations contained in paragraphs I through 85 of this complaint as if fully set forth herein.

87. The Fifth Amendment states in pertinent part that *"no person ... be deprived of life, liberty, or property, without due process of law."*

88. The Due Process Clause requires that prison regulations provide proper and timely notices of the charges and/or accusations against all inmates, as well as timely hearings where the inmate can defend himself against these charges. It also requires that those officers in charge of the custody of those inmates provide the procedural means for these inmates to not only receive timely notices but also to provide the means for the inmates to exhaust their administrative remedies.

89. Plaintiffs claim that defendants have violated their liberty interests and procedural due process rights conferred by 28 C.F.R. 541.22, et seq. and protected by the Due Process Clause of the Fifth Amendment.

90. Plaintiffs claim they have a protected liberty interest in not being confined in

Administrative Detention and that the deprivation of that right by defendants occurred without due process of law.

91. Plaintiffs allege that the lengthy confinement in administrative detention created a liberty interest that is atypical and significant.

92. Plaintiffs claim that 28 C.F.R. 541.22 has created a liberty interest and the section contains mandatory language and creates a protectable liberty interest in not being wrongfully confined.

93. Plaintiffs argue that whatever discretion the defendant Warden may have in placing them in the SHU, this discretion is not boundless and continuing.

94. Plaintiffs claim that while subsection (a) of Section 541.22 may be read to accord the Warden discretion in placing plaintiffs in the SHU, subsection (c) clearly provides for certain hearings and reviews that constrain the Warden's discretion in *maintaining* a prisoner in the SHU and further commands that "[t]he SRO shall release an inmate from administrative detention when reasons for placement cease to exist. See 28 C.F.R. 541.2(c)(1).

95. Plaintiffs allege that Section 541.22 explicitly states that *"[a]dministrative detention is to be used only for short periods of time … or where there are exceptional circumstances, ordinarily tied to security **or complex investigative concerns,*** none of which are implicated in these cases. Plaintiffs both immediately admitted their violations and thus did not require lengthy or complex investigations and Plaintiff McGraw's violations were not even prosecutable as federal crimes.

96. Plaintiffs claim that the regulations provide that an inmate may be kept in administrative detention for longer terms protection only if the need for such protection was factually documented by the SRO, which were not.

16

97. Plaintiffs claim that the above regulations create a protectable liberty interest when an officer's failures to adhere to the regulations result in an "atypical significant deprivation," and not simply ephemeral and insubstantial violations.

98. In these situations, both plaintiffs claim that they have been subjected to very lengthy and unjustifiable detentions without due process of law as both did not receive the proper protections of being given timely notices of the violations, timely reviews and timely disciplinary hearings, pursuant to the requirements of Sections 541.22, 541.23, 541.25 and 541.26. The intentional violations of these sections by defendants have caused an increase in punishment, as defendants and others unnamed did not credit the unlawful time spent in detention when they were later disciplined by the hearing officer.

99. Plaintiffs claim that these defendants are not qualifiedly immune from any and all suits for damages because their conduct clearly violated established statutory and constitutional rights of which a reasonable prison officer would have known.

100.      Plaintiffs claim that these defendants are not qualifiedly immune because this immunity only covers them if it was objectively reasonable for them – as reasonable persons – to believe that their acts did not violate those rights.

101.      Plaintiffs claim that proof of this is shown by defendants telling plaintiffs that their attorney could not assist them and that the attorney could not help them in their detention predicaments. This shows that defendants were well aware that they were violating the established law.

102.      Plaintiffs claim that defendants were well aware they were violating established

law when they knew that plaintiffs had not received their timely rights under the prison

regulations, to wit, notices of lock-up orders, incident reports, timely reviews and refusals of the

means to exhaust administrative remedies (like BP 8s, 9s and 10s).

103.     Plaintiffs claim that all defendants knew that an FBI investigation does not take 9-

months or 5-months respectively and that the length was unjustified and even after they did find

out that it was unjustified, they failed to abide by the applicable laws and regulations and

prolonged the termination of the investigation solely to punish plaintiffs.

104.     As a result of the above, plaintiffs claim that all defendants, jointly and severally,

violated their due process rights under the Fifth Amendment to the United States Constitution

and the laws of the United States.

## VII.

### SECOND CLAIM FOR RELIEF
### (Sixth Amendment Rights Violations]

Plaintiffs herein incorporate by reference and herein re-allege all of the allegations

contained in paragraphs 1 through 102 of this complaint as if fully set forth herein.

105.     The Sixth Amendment to the United States Constitution provides in pertinent part

that *"[i]n all criminal prosecutions, the accused shall ... have the Assistance of Counsel for his

defense."*

106.     This constitutional right to have the assistance of counsel applies to these

plaintiffs as they chose to have retained counsel of their choice to counsel them on all legal

intricacies of the prison system and to make sure that these administrative rights were

constitutionally timely and correctly applied.

107.     Plaintiffs claim that this is applicable to their situations because they were

18

subjected to violations of their right to the assistance of counsel when defendants told plaintiffs that their attorney could not help them, that he could not assist them in their administrative detention predicaments, when they ridiculed their attorney in front of them, and when defendants prevented their attorney from visiting them and from having legal contact visitations with counsel of their choice.

108.     Plaintiffs herein allege that these Sixth Amendment violations by all defendants were willful, intentional and specifically designed to interfere with these rights and prevent plaintiffs from the exercise of their Sixth Amendment protections. These rights also include the right of access to the courts.

## VIII.

### THIRD CLAIM FOR RELIEF
### [Eighth Amendment Rights Violations]

Plaintiffs herein incorporate by reference and herein re-allege all of the allegations contained in paragraphs 1 through 108 of this complaint as if fully set forth herein.

109.     The Eighth Amendment to the United States Constitution provides in pertinent part that *"cruel and unusual punishment (not) be inflicted."*

110.     Plaintiffs herein claim that defendants have to provide humane conditions of confinement and must ensure that inmates receive adequate food, clothing, shelter and medical care and must take reasonable measures to guaranty their safety and well being.

111.     Plaintiffs claim that some conditions of confinement may establish an Eighth Amendment violation in combination when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise, or for example, a low or high cell temperature combined with either a failure to provide blankets or to provide an adequate air conditioned environment.

19

112.     Plaintiffs claim that defendants knew of and disregarded excessive risks to plaintiffs' health and safety, that they were aware of facts from which inferences could be drawn that a substantial risks of serious physical or mental harms existed and that these defendants could have easily drawn inference from those facts but did not.

113.     Any fact finder could have easily concluded that these defendants knew of the substantial risks from the very fact that the risks were obvious.

114.     Thus plaintiffs claim that defendants had sufficiently culpable states of mind and that these defendants were deliberately indifferent to their health and safety.

115.     Plaintiffs claim that defendants knew that plaintiff McGraw was physically and mentally suffering inside the detention cell and they failed to come to his aid and to render aid.

115.   Plaintiffs claim that defendants knew that plaintiff Marone was a mentally and emotionally handicapped inmate and that defendants intentionally continued to subject him to the deprivation of the basic necessities of prison life concerning mental, health and medical care.

116.     Plaintiffs herein allege that defendants knew that plaintiffs were in need of medical, health and mental care and did not provide it.

117.     Plaintiffs claim that all defendants were quite aware that they were violating their Eighth Amendment rights of confinement and that defendants willfully and deliberately violated those rights.

## IX.

## FOURTH CLAIM FOR RELIEF
### [Conspiracy to Violate Plaintiffs' Fifth, Sixth and Eighth Amendments]

Plaintiffs herein incorporate and herein re-allege all of the allegations contained in paragraphs 1 through 117 of this complaint as if fully set forth herein.

118. Plaintiffs claim that all defendants conspired to violate plaintiffs' Fifth, Sixth and

Eighth Amendments Rights as stated above.

119. Plaintiffs claim that all defendants purposely conspired to violate plaintiffs rights by unlawful means.

120. The unlawful means used by all defendants is when defendants intentionally and unlawfully violated the Due Process rights of plaintiffs when defendants extended the Administrative Detentions of plaintiffs beyond what was required by law and by the applicable facts for the sole unlawful purpose of punishing plaintiffs and of denying them these rights.

121. The unlawful means used by defendants to violate plaintiffs' due process rights is when they conspired to deprive plaintiffs of timely notices of charges and of hearings and of the ability to defend themselves by interfering with their due process rights to exhaust administrative remedies.

122. The unlawful means used by defendants is when they conspired to violate the Sixth Amendment rights of plaintiffs by discouraging plaintiffs from retaining the attorney of their choice, by advising them that no attorney will defeat defendants in court, that they did not have any attorney rights while in prison, by belittling their attorney, by ridiculing their attorney and by attempting to prevent their attorney from professionally assisting them by blocking the attorney's access to his clients.

123. Plaintiff allege that defendants, and others unnamed, engaged in a '*Pattern of Deceit*' when they referred these matters to the FBI for criminal review when in reality their true intentions were to use that as an excuse to wrongfully extend the period of detention and thus punish plaintiffs beyond what was required by law.

124. By these unlawful means defendants in concert with each other engaged in a pattern

of deceit when defendant told plaintiffs that the Discipline Hearing date could not take place until the FBI concluded their investigation.

125.Plaintiffs claim that all defendants acted with the intent to harm plaintiffs.

126.That defendants accomplished the objects of their agreements by committing all of the acts previously alleged herein.

127.And that this conspiracy and/or agreements between all defendants proximately caused the loss of administrative remedies, unlawful detentions, losses of due process rights and liberty, losses of assistance of counsel and injuries to their confinement rights, by such illegal and unjustified lengthy administrative detentions.

## X.

### FIFTH CLAIM FOR RELIEF
### [False Imprisonment under Texas Law]

Plaintiffs herein incorporate and re-allege all of the allegations contained in paragraphs 1 through 127 of this complaint as if fully set forth herein.

128. Plaintiffs claim that defendants willfully and illegally detained plaintiffs when defendants extended their administrative detentions beyond what was required by law and by fact.

129.Plaintiffs did not consent to said illegal extended administrative detentions.

130.Plaintiffs claim that defendants had no legal authority or justification to detain plaintiffs during said unlawful extended administrative detentions in the Special Housing Unit of the Federal Correctional Institution at Seagoville, Texas.

131.Defendants' wrongful acts caused injuries to plaintiffs' rights guaranteed by the United States Constitution which included deprivation of the most basic rights for medical, health and mental care and of liberty.

## XI.

### SIXTH CLAIM FOR RELIEF
### [Intentional Infliction of Emotional Distress]
### [Under Texas Law]

Plaintiffs herein incorporate by reference and herein re-allege all of the allegations contained in paragraphs 1 through 131 of this complaint as if fully set forth herein.

132. Defendants' conduct in unlawfully extending plaintiffs' administrative detentions beyond what was required by law and by fact was intentional, reckless, extreme and outrageous.

133.Defendants' unlawful conduct proximately caused severe emotional distress to plaintiffs as plaintiffs suffered from visual hallucinations, mental breakdowns, physical injuries, mental depressions, vomiting, physical pain, starvation, dehydration, loss of weight, extreme social isolation, humiliation, mental powerlessness, insomnia, desperation, loss of sense of time and suicidal ideation, as a result of these unlawful lengthy detentions.

## XII.

### DAMAGES

As a direct and proximate result of defendants' conduct, plaintiffs suffered the following injuries and damages.

1. For compensatory damages in an amount no less than $100,000.00;

2. For statutory damages;

3. For vindication of Constitutional Rights violations;

4. For punitive damages because defendants' actions were reckless and callous and indifferent to their constitutional rights;

5. For statutory attorney fees;

6. For other attorney fees and costs;

all subject to proof at trial; and

7. And for all other relief this Court may deem just and proper.

Dated: February 14, 2013.

Respectfully Submitted,

\_\_\_/s/\_\_\_*edmundo espinoza*_____
EDMUNDO ESPINOZA, attorney for
Plaintiffs Jesse McGraw and Paul Marone
Stanford Corporate Centre
14001 N. Dallas Parkway, Suite 1200
Dallas, Texas 75240
Tel (214) 475-3015
Fax (469) 737-1259
edmundoespinoza@aol.com

# ATTACHMENT

AFFIDAVIT

I, Jesse William McGraw, hereinafter "Affiant" being over the age of
majority, having personal knowledge of the facts, and being competent to testify,
would if called to testify state the following:

1.     Your Affiant has been confined to the Special Housing Unit [SHU] since
31 January, 2012, for a minor infraction of the Bureau of Prisons [BOP] rules
regarding the Corrlinks system;

2.     Your Affiant suffers from anxiety, depression and an infected toe that
remains untreated by medical and psychology staffs, and a denial of Due Process
in his attempts to exhaust administrative remedies for same;

3.     The following is an accurate recap of my attempts to seek remedy and the
responses or lack thereof by B.O.P. staff;

| To: | Date: | Subject | Response |
|---|---|---|---|
| Region S. Central | 5-03-12 | Letter of complaint re. missing legal materials | 5-23-12 |
| Counselor D. Thurston | 4-25-12 | Inmate to Staff Request ["Cop-Out"] re, Due Process violations. | "No" |
| "                    " | 6-05-12 | Two Inmate to Staff Requests re. BP-8.5 forms | "No" |
| "                    " | 6-20-12 | BP-8 (obtained via inmate) filed to Thurston | "No" |
| "                    " | 10-09-12 | Cop Out requesting BP-10 for Appeal | "No" |
| Associate Warden | 6-20-12 | Cop Out requesting Supervision of Counselor Thurston | "No" |
| "              " | 10-07-12 | Cop Out [Second Request re. above] | "No" |
| Special Invest. Serv. | 4-25-12 | Cop Out re, missing materials, email, due process | "No" |
| S.I.S. | 5-06-12 | Cop Out to Landing re. I.R. | "No" |
| "    " | 4-30-12 | Cop Out of complaint re, due process | "No" |
| "    " | 5-30-12 | Cop Out to Gentry re, due process, legal materials | "No" |
| Case Mgr. Smith | 6-29-12 | Cop Out requesting BP forms | "No" |
| "            " | 10-09-12 | Cop Out requesting BP-10 Appeal | "No" |
| Warden Mejia | 9-03-12 | Letter of apology and request for release to general population | "No" |
| President Obama | 9-17-12 | Petition for Clemency [BOP staff informed me of rejection in 38 days] Not from Pardon Attorney | |
| Medical Staff | 4-30-12 | Cop Out re. dental check-up | "No" |
| "          " | 4-26-12 | Cop Out re. package form | "No" |

Page one of three

| | | | |
|---|---|---|---|
| Medical Staff | 11-18-12 | Cop Out re. infected toe | "No" |
| "     " | 11-19-12 | Cop Out re, blood pressure test | "No" |
| "     " | 12-05-12 | Spoke to nurse and was told to be patient, so I spoke to C.O. Rodriguez complaining of severe pain in ingrown and infected toe | "No" |
| "     " | 12-06-12 | Nurse provided Ibuprofin 600 mg, and advised to send Cop Out to Duckworth re. pain and infection. | ____ |
| "     " | 12-14-12 | Nurse Nguyen advised I'm on waiting list for blood test only | ____ |
| Dr. Poulsen, Psych. | 11-08-12 | Cop Out [via Quick] for anxiety | "No" |
| " | 11-21-12 | Cop Out re, psych issues | "No" |
| Case Mgr. Smith | 12-03-12 | Cop Out re, due process concerns, and status of Clemency Petition | "No" |
| " | 11-11-12 | Requested BP-8 and BP-9 forms | "No" |
| Region S. Central | 11-15-12 | Informal Appeal of Detention | "No" |
| Dr. Poulsen, Psych | 11-26-12 | Spoke about psych/sleep issues | "No" |
| Case Mgr.  Smith | 11-27-12 | Requested BP-8 | "No" |
| Medical Staff | 11-28-12 | Spoke to Nurse about pain/toe | ____ |
| "     " | 11-08-12 | Nguyen refused sleep aid phs. exam package form | "No" |
| C.O. K. Dean | 12-06-12 | Requested legal call | "Good luck with that" |
| C.O. Chep | 12-07-12 | Requested legal call 3 times | Chep emailed Smith "yes" |
| Case Mgr. Smith | 12-10-12 | Requested legal call | Yes |
| " | 12-11-12 | Made call, but no BP forms | yes/no |
| " | 12-18-12 | Cop Out re. Notary verification. | pending |
| Notary | 12-20-12 | Cop Our re. notary verification | 12-26-12 |
| Case Mgr. Smith | 12-18-12 | Attn'y visit scheduled @ 1:30 pm cancelled by Smith | ____ |
| Pardon Attorney | 12-05-12 | Letter re. Clemency Pet. status | pending |
| C.O. Webb | 12-06-12 | Confirmed SIS holding mail in/out | ____ |
| S.I.S. | 11-12-12 | Cop Out to Gentry re, journals return to me | "No" |
| President Obama | 05-09-12 | Letter re, clemency petition | pending |
| S.I.S. | 11-11-12 | Cop Out to Gentry re, journals and case law, withholding mail | "No" |
| Chaplain Shanefish | 12-22-12 | Cop Out Requesting NIV Bible | 12-28-12 |

4.    Your Affiant was served with an Administrative Detention Order [ADO] on 31 January, 2012, an Incident Report [IR] 1 October 2012, and a Discipline Hearing 4 October, 2012;

5.    Your Affiant suffers daily extreme pain due to the ingrown and infected toes that now have progressed to an open wound;

6.    Medical Staff's treatment of Doxycycyine Hyclate (100 mg) ineffective so it was replaced with Cephalexin (500 mg) also ineffective, but Staff reticent to do more are exhibiting gross negligence and indifference to my medical needs.

FURTHER AFFIANT SAYETH NAUGHT

Done this 2nd day of the month January, 2013, at Dallas County, Texas, under penalty

and pains of perjury, under the laws of the United States.

Jesse William McGraw
c/o # 38690-177
F.C.I. Seagoville
P.O. Box 9000
Seagoville, TX 75159


ACKNOWLEDGEMENT

On this day the man Jesse William McGraw appeared before me and by evidence

sufficient to me proved himself to be the man who subscribed his signature to the

attached Affidavit.


Notary Public

My commission expires _____

CAITLIN AMANDA KRAUSS
MY COMMISSION EXPIRES
September 6, 2016