## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **JESSE WILLIAM MCGRAW,** an inmate as an individual; and **PAUL MARONE,** an inmate as an individual, | § § § § | |
| Plaintiffs, | § § § | |
| v. | § § | Civil Action No. **3:13-CV-740-L** |
| **WARDEN EDDIE MEJIA, Federal Correctional Institution, Seagoville; ASSOCIATE WARDEN BARBARA BLANKENSEE; LIEUTENANT NFN GENTRY; LIEUTENANT NFN SHANNON; LIEUTENANT NFN WIGGINTON; CASE MANAGER NFN SMITH; PATRICIA ANTHONY; CASE MANAGER NFN HOFFMAN; COUNSELOR NFN THURNSTON; LIEUTENANT NFN WILSON; MAUREEN CRUZ, Former Warden; and the UNITED STATES of AMERICA,** | § § § § § § § § § § § § § § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant United States of America's Motion to Dismiss Plaintiffs' Fourth Claim for Relief and Fifth Claim for Relief in Plaintiffs' Amended Complaint for Lack of Subject Matter Jurisdiction (Doc. 51), filed June 13, 2014. After careful consideration of the motion, pleadings, record, and applicable law, the court **grants** Defendant United States of America's Motion to Dismiss Plaintiffs' Fourth Claim for Relief and Fifth Claim for Relief in Plaintiffs' Amended Complaint for Lack of Subject Matter Jurisdiction.

## I.    Factual and Procedural Background

Plaintiffs Jesse McGraw ("McGraw") and Paul Marone ("Marone") filed their Complaint against Warden Eddie Mejia, Associate Warden Barbara Blankensee, Lieutenant Gentry, Lieutenant Shannon, Lieutenant Wigginton, Case Manager Smith, Patricia Anthony, Case Manager Hoffman, Counselor Thurnston, Lieutenant Wilson, and Maureen Cruz (collectively, "Individual Defendants") on February 14, 2013.  On May 16, 2014, Plaintiffs filed their First Amended Complaint ("Amended Complaint").[1]  Plaintiffs' Amended Complaint sets forth five claims against the Individual Defendants: (1) Fifth Amendment "due process" violations; (2) Eighth Amendment rights violations;[2] (3) conspiracy to violate Plaintiffs' Fifth and Eighth Amendment rights; (4) false imprisonment under Texas law; and (5) intentional infliction of emotional distress under Texas law. On March 31, 2014, the court filed an order substituting the United States of America as the party defendant for the Individual Defendants claims for common law tort claims for false imprisonment and intentional infliction of emotional distress.

Before Plaintiffs amended their Complaint, the United States of America moved to dismiss Plaintiffs' claims for false imprisonment and intentional infliction of emotional distress for lack of subject matter jurisdiction.  The court denied the motion, as it was not satisfied with the parties' treatment and discussion of these claims.  The court, however, stated that it was not opposed to

---

[1] On July 15, 2013, the Individual Defendants filed a motion to dismiss for failure to state a claim.  On April 3, 2014, the court granted the Individual Defendants' motion to dismiss; however, it gave Plaintiffs an opportunity to file an amended complaint and address the court's concerns.

[2] McGraw asserts a claim for violations of his Eighth Amendment rights, but Marone does not.  Pls.' Am. Compl. ¶¶ 132-39.

**Memorandum Opinion and Order - Page 2**

reconsidering the issue, provided that the parties fully set forth what actually transpired. Accordingly, the United States filed a second Motion to Dismiss Counts IV and V for Lack of Subject Matter Jurisdiction, which is before the court today.

### A.    Alleged Facts Relating to Plaintiff Jesse McGraw[3]

On June 26, 2009, McGraw was arrested for causing the Transmission of a Malicious Code, Computer Program, Code or Command, in violation of 18 U.S.C. §§ 1030(a)(5)(A) and 1030(c)(4)(B)(iv).  On March 17, 2011, McGraw was sentenced to 110 months in prison.

On January 31, 2012, McGraw received a "lock up order," signed by Lieutenant Wigginton, which stated that McGraw violated prison regulations by using another inmate's e-mail account for his own benefit.  McGraw was placed in administrative detention, and he admitted to this violation. McGraw contends that a copy of the Incident Report was given to him on September 27, 2012, eight months after the incident.  There was a disciplinary hearing on October 4, 2012.  McGraw then received a report with his sanctions on November 15, 2012.

McGraw contends that he asked some of the Defendants for an explanation as to why he was subject to such a long administrative detention.  McGraw asserts that Defendants responded by saying that the matter was turned over to the FBI.

McGraw contends that he made every attempt to exhaust his administrative remedies by requesting that he be provided with "BOP Forms" to accomplish each stage of the administrative

---

[3] Many of the dates provided by McGraw and Marone differ from the dates that Defendants provide in their Appendix.  The court summarizes Plaintiffs' allegations in this section.

**Memorandum Opinion and Order - Page 3**

proceedings; however, he contends that Defendants did not provide the relevant forms, such as BP 8s and 9s, necessary for filing a grievance pursuant to the procedure required by the Prison Litigation Reform Act ("PLRA").  He also asserts that Lieutenant Shannon told him, "[W]e go only by who you are," when discussing the length of the detention.

McGraw contends that Defendants willfully detained him when they claimed that the lengthy detention was due to FBI investigations.  McGraw alleges that this detention was against his consent and that the period was extended maliciously in violation of his due process rights.  He also contends that during his administrative detention from January 31, 2012, to October 4, 2012, he was subjected to (1) constant verbal abuse; (2) retaliatory conduct; (3) physical injuries; (4) exposure to lead paint; (5) exposure to contaminated meals; (6) a lack of basic medical care; (7) emotional injuries; and (8) 125 degree conditions.  Because of these types of conditions, McGraw maintains that he experienced starvation, dehydration, mental breakdowns, visual hallucinations, losses of memory, mental depression, suicidal thoughts, and physical injuries. McGraw also contends that Defendants prevented him from having legal visits with his attorney.

### B.    Alleged Facts Relating to Plaintiff Paul Marone

On August 3, 2011, Marone was arrested for Coercion and Enticement of a Minor Female, in violation of 18 U.S.C. § 2423(b).  On March 26, 2011, Marone was sentenced to three years in prison.  On June 5, 2012, Marone self-surrendered to the Federal Correctional Institution at Seagoville, Texas.  On September 20, 2012, the staff in Seagoville determined that he used the prison telephones to call the victim in his underlying case, which was contrary to the court's order. Marone was immediately placed in administrative detention. He was not given a "lock up order" within a reasonable time after he was placed in administrative detention.  On October 1, 2012,

Marone asked Lieutenant Shannon if he could have the order.  Lieutenant Shannon said he would receive it the next day, but Marone did not receive it that next day.

On November 6, 2012, Marone asked for a BOP BP-8 and BP-9 form so that he could exhaust his administrative remedies; however, he was ignored, ridiculed, and never provided with the forms. On December 12, 2012, Marone asked Case Manager Martinez for the forms again, but he was not provided with them.  On December 31, 2012, and January 2, 2013, Marone asked if he could call his attorney, but his request was denied.  He contends that his legal mail and family mail were delayed for 10 days from delivery.

On January 4, 2013, Marone received a copy of the Administrative Detention Order from Lieutenant Shannon; however, it was backdated and said that Marone received the order on September 20, 2012.  On January 16, 2013, Marone received a copy of the Incident Report, or lock up order. On January 23, 2013, Marone was given a Notice of Disciplinary Hearing.  He was told that the administrative detention was lasting a long time because the matter was under FBI investigation.

Marone contends that Defendants knew about his emotional handicaps and were deliberately indifferent to them and asserts that Defendants' conduct led to physical and mental damage.  Marone contends that he was mentally abused and ridiculed by Defendants.  Marone also contends that he was told that his attorney could not help him and that his attorney would not succeed against Defendants or Federal Correctional Institution, Seagoville.  He was also told by Patricia Anthony that future legal visits with his attorney had to be carried out through the television monitoring system.  Marone also contends that he was pressured by Case Manager Hoffman to disclose personal and legal information and that Hoffman refused to provide him access to his attorney.

**Memorandum Opinion and Order - Page 5**

## II.     Legal Standard

A federal court has subject matter jurisdiction over civil cases "arising under the Constitution, laws, or treaties of the United States," or over civil cases in which the amount in controversy exceeds $75,000, exclusive of interest and costs, and in which diversity of citizenship exists between the parties. 28 U.S.C. §§ 1331, 1332. Federal courts are courts of limited jurisdiction and must have statutory or constitutional power to adjudicate a claim. *See Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). Absent jurisdiction conferred by statute or the Constitution, they lack the power to adjudicate claims and must dismiss an action if subject matter jurisdiction is lacking. *Id.*; *Stockman v. Federal Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) (citing *Veldhoen v. U.S. Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994)). "[S]ubject-matter jurisdiction cannot be created by waiver or consent." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919 (5th Cir. 2001).

Federal courts may also exercise subject matter jurisdiction over a civil action removed from a state court. Unless Congress provides otherwise, a "civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

A federal court has an independent duty, at any level of the proceedings, to determine whether it properly has subject matter jurisdiction over a case. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative even at the highest level."); *McDonal v. Abbott Labs.*, 408 F.3d 177, 182 n.5 (5th Cir. 2005) (A "federal court may raise subject matter jurisdiction *sua sponte*.").

**Memorandum Opinion and Order - Page 6**

In considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, "a court may evaluate (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001) (citation omitted).  Thus, unlike a Rule 12(b)(6) motion to dismiss for failure to state a claim, the district court is entitled to consider disputed facts as well as undisputed facts in the record and make findings of fact related to the jurisdictional issue.  *Clark v. Tarrant Cnty.*, 798 F.2d 736, 741 (5th Cir. 1986).  All factual allegations of the complaint, however, must be accepted as true. *Den Norske Stats Oljeselskap As*, 241 F.3d at 424.[4]

### III.     Analysis

### A.     Contentions of the Parties and Applicable Law

Defendant United States of America ("United States" or Defendant") argues that the court lacks subject matter jurisdiction and moves to dismiss Counts IV and V under Federal Rule of Civil Procedure 12(b)(1).  Counts IV and V in Plaintiffs' Amended Complaint are for false imprisonment and intentional infliction of emotional distress claims, respectively.

The Untied States argues that Plaintiffs' Amended Complaint is "deficient on its face," because they never allege that they "filed, or attempted to file, a written administrative tort claim with the appropriate agency." Def.'s Mot. to Dismiss 7.  Instead, both Plaintiffs merely allege that they attempted to exhaust their administrative remedies through the Bureau of Prisons' ("BOP")

---

[4] The United States of America asserts that a factual attack under Rule 12(b)(1), as is the case here, permits the court to look beyond the pleadings and does not does not require the court to accept the factual allegations in the live complaint as true.  As this section makes clear, the court is permitted to supplement the complaint with undisputed facts and resolve disputed facts. *Den Norske Stats Oljeselskap As*, 241 F.3d at 424 (citation omitted).  The court proceeds with its analysis accordingly.

grievance procedures, as required by the Prison Litigation Reform Act ("PLRA").[5]  According to

Defendant, exhaustion under the PLRA does not satisfy the exhaustion requirement under the

Federal Tort Claims Act ("FTCA") and dismissal is therefore warranted.

The United States asserts a second basis for dismissal and argues that Plaintiffs have failed

to satisfy their burden of proof in establishing jurisdiction.  Defendant argues that both Plaintiffs

failed to file an administrative tort claim with the appropriate administrative agency, as required by

the FTCA, which leaves the court without jurisdiction to hear these claims.

McGraw argues that he "made every attempt to exhaust his administrative remedies by

requesting that he be provided with BOP Forms to accomplish it at every stage of the administrative

proceedings, however, these attempts were always frustrated by all defendants herein by not

providing the required forms like BP 8s and 9s."  Pls.' Am. Compl. ¶ 32.  Marone, likewise, asserts

that he "has tried to exhaust his administrative remedies but has been prevented by defendants to do

so, by a series of denials and non-responses, causing plaintiff to miss required deadlines."  Pls.' Am.

Compl. ¶ 67.

---

[5] The Fifth Circuit summarizes the process for resolving grievances by inmates as follows:

The BOP has a four-step process for resolving grievances by inmates. First, an inmate must attempt to informally resolve the issue with the staff. 28 C.F.R. § 542.13(a). . . . Second, if informal resolution is unsuccessful, the inmate must submit a formal written Administrative Remedy Request (form BP–9) to the warden within twenty days after the date on which the basis for the request occurred. 28 C.F.R. § 542.14. Third, if the inmate is not satisfied with the warden's response, he may submit an appeal (form BP–10) to the Regional Director within twenty days of the date of the warden's response. 28 C.F.R. § 542.15. Fourth, if the inmate is not satisfied with the Regional Director's response, the inmate may submit an appeal (form BP–11) to the General Counsel within thirty days of the Regional Director's response. 28 C.F.R. § 542.15. An inmate has not exhausted his administrative remedies until his claim has been denied at all levels.

*Huff v. Neal*, 555 F. App'x 289, 293 (5th Cir. 2014).

**Memorandum Opinion and Order - Page 8**

The FTCA permits private parties to sue the United States and its agencies in a federal court for most torts committed by persons acting on the government's behalf, and the FTCA serves as a limited waiver of sovereign immunity. *See* 28 U.S.C. § 2674. The FTCA bars a claimant from bringing a suit in federal court unless he files an administrative claim with the appropriate federal agency and either obtains a written denial or waits six months after the claim is presented to the federal agency in question. *See* 28 U.S.C. § 2675(a).[6] Under the FTCA, Plaintiffs must give notice of their claim to the appropriate federal agency. *Cook v. United States*, 978 F.2d 164, 165-66 (5th Cir. 1992). "Furnishing notice is a jurisdictional prerequisite to filing suit under the FTCA." *Id.* at 166 (citation omitted). "A claimant gives proper notice within the meaning of § 2675(a) only when the agency obtains sufficient written information to begin investigating and the claimant places a value on his claim." *Id.* (citation omitted). No particular method of giving notice is required. *Id.* (citation omitted). Filing a Form 95 with the agency is the usual method. *Id.* (citation omitted). For the reasons described below, the court determines that Plaintiffs have failed to satisfy the notice and timing requirements of the FTCA.

---

[6] The statute provides:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section. The provisions of this subsection shall not apply to such claims as may be asserted under the Federal Rules of Civil Procedure by third party complaint, cross-claim, or counterclaim.

28 U.S.C. § 2675(a).

**Memorandum Opinion and Order - Page 9**

B.      FTCA and Notice

The court cannot identify any form of notice provided by Plaintiffs to the BOP that would satisfy the requirements of the FTCA, nor can it identify any exceptions that would exempt Plaintiffs from this requirement.  Because Plaintiffs failed to provide notice to the appropriate federal agency, the court lacks jurisdiction.  Both Plaintiffs assert that they attempted to exhaust their administrative remedies by filing BP forms 8, 9, and 10, pursuant to the exhaustion procedure required by the PLRA; however, this does not give the court subject matter jurisdiction.[7]

Defendant argues that filing a claim with the BOP through its grievance procedures is not equivalent to filing an administrative tort claim with the BOP.  The Fifth Circuit has recognized that "[t]he BOP's FTCA claims procedure is separate from the BOP's administrative remedies procedure, *see* 28 C.F.R. §§ 543.30-543.32." *Lopez- Heredia v. University of Texas Med. Branch Hosp.*, 240 F. App'x 646, 647 (5th Cir. 2007).  There is some additional authority to support Defendant's proposition.  *See Ahern v. United States.*, No. 14-191, 2014 WL 1614154, at *3 (N.D. Tex. April 22, 2014) ("The papers attached to the complaint appear to support a conclusion that plaintiff has exhausted, or attempted to exhaust, his administrative remedies through the Bureau of Prisons, but not those required for filing a claim under the FTCA.  Filing a claim through the Bureau of Prisons's grievance procedures is not equivalent to initiating the administrative process necessary for filing an FTCA claim.") (citing  *Lambert v. United States*, 198 F. App'x 835, 840 (11th Cir. 2006)); *Rosalez v. United States*, No. 09-148, 2009 WL 1148375, at *3 (N.D. Tex. April 28, 2009) ("Plaintiff does not allege that he filed an Administrative Tort Claim, which is a separate process

_____

[7] Although the court previously denied Defendant's Motion to Dismiss Counts IV and V, it noted that Defendant inadequately briefed the issues and stated it would revisit these counts upon further briefing.  The United States has provided the court with further analysis, and, upon revisiting the issue, the court determines it lacks jurisdiction.

**Memorandum Opinion and Order - Page 10**

than the four-step grievance procedure and applies only to tort claims."); *Richard v. Capps*, No. 07-138, 2007 WL 2428928, at *3 (N.D. Tex. August 28, 2007) ("The exhaustion requirements for a *Bivens* claim are separate and distinct from the exhaustion requirements under the FTCA.") (citation omitted). Because the Amended Complaint only mentions Plaintiffs' attempts to exhaust the BOP's grievance procedure, which the Fifth Circuit has recognized as a separate and distinct procedure from that required by the FTCA, Plaintiffs have failed to satisfy the notice requirement under the FTCA. Accordingly, the court lacks jurisdiction over Plaintiffs' claims for false imprisonment and intentional infliction of emotional distress.

Even assuming that filing a claim through BOP's grievance procedure provides sufficient notice under the FTCA, Plaintiffs' pleadings acknowledge that they failed to exhaust their administrative remedies and argue that the Individual Defendants frustrated their efforts to do so. Nevertheless, Plaintiffs admit that, at the time they filed their complaint, they had not complied with the jurisdictional prerequisites set forth under the FTCA. The consequence of failing to exhaust administrative remedies divests this court of jurisdiction.

Moreover, as to McGraw, the BP-10 forms filed by him, described in more detail in the following section, do not provide sufficient notice under the FTCA. Before initiating this litigation, McGraw filed two BP-10 forms in October 2012 and November 2012. According to Sonya Cole, the Senior Counsel with BOP's Southern Central Regional Office in Grand Prairie, Texas, "[b]oth of these BP-10s concerned [McGraw's] Disciplinary Hearing Officer (DHO) hearing held on October 4, 2012 . . . [and] were not relevant to the FTCA claim . . . ." Def.'s Mot. to Dismiss, App.

2-3, Ex. 1.[8]  Forms unrelated to "the allegations [raised] in his FTCA claims" cannot provide the requisite notice under the FTCA.  Def.'s Mot. to Dismiss App. 2-3, Ex. 1.[9]

The court therefore must determine whether an exception under the FTCA is applicable to Plaintiffs, as their pleadings appear to seek an exception to the general notice requirement. Ultimately, there is no exception to circumvent the notice requirements under the FTCA, as the filing requirements under the FTCA are "jurisdictional in nature" and "the filing of a claim with the appropriate federal agency cannot be waived."  *Gregory v. Mitchell*, 634 F.2d 199, 204 (5th Cir. 1981).  "By adopting the FTCA, Congress waived governmental immunity but it did so only under specifically prescribed conditions," and the Fifth Circuit makes clear that providing notice to the federal agency is a jurisdictional prerequisite to filing suit in federal court.  *Montoya*, 841 F.2d at 104 ("Before one may file suit under the Act, one must present notice of the claim to the implicated agency in order that there might be a meaningful opportunity to resolve the matter without the necessity of judicial intervention.").

The Fifth Circuit does not view arguments seeking exceptions to the FTCA favorably. For instance, it specifically has held that futility is not an exception to the FTCA.  *In re Complaint of Ingram Barge Co.*, 351 F. App'x 842, 843 (5th Cir. 2009) ("First, the FTCA does not admit a futility

---

[8] Ms. Cole also asserts that a search of the BOP's Administrative Torts computer database did not reveal that any administrative tort claims were filed by either of Plaintiffs. Def.'s Mot. to Dismiss, App. 2-3, Ex. 1; Def.'s Mot. to Dismiss, App. 1-2, Ex. 2.

[9] The United States has not provided the court with a copy of the BP-10 forms.  Defendant, however, alludes to the fact that these forms do not include the "sum-certain" of McGraw's damages, which would provide an additional basis for dismissal.  Def.'s Mot. to Dismiss 8-9.  Stating the "sum-certain" for Plaintiff's damages is a required element of proper notice under the FTCA.  *See Montoya v. U.S.*, 841 F.2d 102, 104 (5th Cir. 1988) ("[Prior Fifth Circuit] cases teach that valid notice requires a writing that informs the agency of the facts of the incident and the amount of the claim.").

exception to its exhaustion requirement . . . .").  Although not directly applicable, the Fifth Circuit's

analysis for declining to equitably toll FTCA's filing deadlines is instructive:

> [Plaintiff] argues that, because she reasonably relied on the claims of the
> representative that there was "nothing to worry about," the limitations period should
> be equitably tolled. We disagree. We have explained that "[l]imitations periods in
> statutes waiving sovereign immunity are jurisdictional, and a court exercising its
> equitable authority may not expand its jurisdiction beyond the limits established by
> Congress." *Ramming*, 281 F.3d at 165. Because the FTCA waives the Government's
> immunity, in construing the FTCA's statute of limitations, we will "not take it upon
> [ourselves] to extend the waiver beyond that which Congress intended." *Id*. (*citing
> Kubrick*, 444 U.S. at 118, 100 S.Ct. 352) (internal quotation marks and brackets
> omitted). Therefore, the district court correctly held that [Plaintiff's] claim should not
> be equitably tolled.

*In re FEMA Trailer Formaldehyde Products Liability Litigation*, 646 F.3d 185, 190-91 (5th Cir.

2011); *but see Perez v. United States*, 167 F.3d 913, 918 (5th Cir. 1999) ("[S]ome such statutes

allow for equitable tolling in limited circumstances to prevent a plaintiff from unjustly losing a claim

vigorously pursued. Only because the facts of this case fall within the doctrine's ambit, indeed do

so in two different ways, do we find the limitations period tolled here.").  *In re FEMA* strictly

construes the requirements of the FTCA and demonstrates the Fifth Circuit's disinclination to

"extend the [FTCA's] waiver beyond what Congress intended." 646 F.3d at 190-91.

The court does not have jurisdiction over Counts IV and V, as Plaintiffs were required to

provide notice to the appropriate federal agency, and, by their own admission, they failed to do so.

Plaintiffs must exhaust their administrative remedies first, and only then, are they permitted to

proceed to federal court, provided that the statute of limitations has not expired.  *See In re FEMA*,

646 F.3d at 189-90 ("[A] cause of action accrues when the plaintiff knows of the injury and its

cause," and "[t]he FTCA requires that a tort claim against the federal government be filed with the

appropriate agency within two years after the claim accrues.").  Accordingly, the court lacks

**Memorandum Opinion and Order - Page 13**

jurisdiction over Plaintiffs' claims of false imprisonment and intentional infliction of emotional distress, as they have failed to exhaust their administrative remedies.

### C.    FTCA and Timing

Notwithstanding the analysis in the preceding section, even if the court assumes Plaintiffs provided the BOP with appropriate notice under the FTCA, this court still lacks jurisdiction over Counts IV and V, as neither Plaintiff complied with the timing requirements under the FTCA.  The court discusses each of Plaintiffs' deficiencies regarding the FTCA's timing requirements in the following sections.

### 1.    Plaintiff Jesse McGraw

Based on the briefing that is before the court, McGraw attempted to file BP-10 forms with the BOP Regional Office on three separate occasions in October 2012, November 2012, and February 2013.  *See* App. 3, 8; Def.'s Mot. to Dismiss 12 n.2.  The October 2012 and November 2012 BP-10 forms were initiated prior to the filing of this action, while the two BP-10 forms submitted on  February 26, 2013, were filed after the commencement of this lawsuit.  Def.'s Mot. to Dismiss, App. 2-3, Ex. 1.  All of these forms fail to provide this court with jurisdiction.

 The Supreme Court has made clear that "[t]he FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies." *McNeil v. United States*, 508 U.S. 106, 113 (1993).  In *McNeil*, the plaintiff commenced suit before he received a final denial of his claim.  The Court held that "[t]he command that an 'action shall not be instituted . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail' is unambiguous." *Id.* at 111.  Accordingly, before a person can file suit in federal court, the appropriate

federal agency must deny his or her claim.  *See*  28 U.S.C. § 2675.  "The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant at any time thereafter, be deemed a final denial of the claim for purposes of this section."  *Id.*  Once a claim is denied by the governing agency or deemed denied by the passage of six months, a person is able to file suit.  *See id.*  Failure to wait six months for a deemed denial divests the court of jurisdiction.  *See Gregory*, 634 F.2d at 204.

In *Gregory*, the plaintiffs "conced[ed] they did not await the required six month period prior to bringing this action, nor was there the required formal denial."  634 F.2d at 204.  The plaintiffs instead argued that the "six month requirement [was] now meaningless because the period ha[d] already run."  *Id.*  The Fifth Circuit disagreed and concluded that the district court lacked jurisdiction and properly dismissed the action against the United States.  *Id.*  "Waivers of sovereign immunity must be strictly construed. Section 2675 is more than a mere statement of procedural niceties. It requires that jurisdiction must exist at the time the complaint is filed."  *Id.*

At the time McGraw filed his complaint, this court lacked jurisdiction over Counts IV and V.  The February 2013 BP-10 forms do not constitute appropriate notice to the BOP, as the suit had already commenced at the time McGraw filed these forms.  Since the FTCA bars claims until a final rejection has issued, McGraw cannot rely on the BP-10 form filed in February 2013 as a basis for jurisdiction.

The BP-10 forms filed in October 2012 and November 2012, likewise, fail to establish jurisdiction.  Plaintiffs prematurely filed suit on February 14, 2013, without first receiving a final

denial from the BOP and without waiting the required six months for a deemed denial.[10]  Thus, this court lacks jurisdiction to hear his claims for false imprisonment and intentional infliction of emotional distress.

Filing a lawsuit prematurely is a ground for dismissing this action, independent of any allegations that the Individual Defendants frustrated Plaintiff's attempts to exhaust his administrative remedies.  Ultimately, dismissal is warranted, as "[a]n action that is filed before the expiration of the six-month waiting period, and is thus untimely, cannot become timely by the passage of time after the complaint is filed."  *Price v. United States*, 69 F.3d 46, 54 (5th Cir. 1995) (citation omitted).

### 2.  Plaintiff Paul Marone

Plaintiff Marone's claims, likewise, fail to comply with the timing requirements prescribed under the FTCA.  Plaintiff Marone did not present his claim to the BOP and wait for a final denial. Even assuming that Plaintiff provided the BOP with notice, he still needed to wait six months before filing suit.  Moreover, in Plaintiff Marone's Opposition to Individual Defendants' Motion for Summary Judgment on Exhaustion of Administrative Remedies and Motion to Dismiss on Qualified Immunity (Doc. 69), filed August 28, 2014, Marone "concedes the arguments raised by Defendants on their motion to dismiss Plaintiff's Fourth and Fifth Claims."  Marone therefore acknowledges that the court lacks jurisdiction to decide Counts IV and V of his Amended Complaint.

As the government points out, even if the court applies the earliest possible date listed in Marone's Amended complaint to calculate whether he waited the required six months for a deemed denial, Marone still fails to satisfy the FTCA.  Marone was placed in administrative custody on

---

[10]  Defendant asserts that the BP-10 forms were never formally denied.  McGraw filed no response to Defendant's Motion to Dismiss, nor does McGraw make any allegations relating to this BP-10 form.

September 20, 2012.  Am. Compl. ¶ 49.  He filed suit less than six months later on February 14,

2013.  Even accepting all of Marone's allegations as true, Marone could not have filed suit on

February 14, 2013.  Marone did not receive a formal denial of any administrative tort claims filed

with BOP,[11] and he did not wait the required six months before filing suit.  Accordingly, he failed

to satisfy the requirements prescribed by the FTCA.  *See Gregory*, 634 F.2d at 204 ("Because it is

a jurisdictional prerequisite, the filing of a claim in this case with the [appropriate federal agency]

cannot be waived.").  The court therefore lacks jurisdiction to decide Marone's claims of false

imprisonment and intentional infliction of emotional distress against the United States.

## IV.    Conclusion

For the reasons herein stated, the court **grants** Defendant United States of America's Motion

to Dismiss Plaintiffs' Fourth Claim for Relief and Fifth Claim for Relief in Plaintiffs' Amended

Complaint for Lack of Subject Matter Jurisdiction and **dismisses without prejudice** Counts IV and

V of Plaintiffs' Amended Complaint for false imprisonment and intentional infliction of emotional

distress.

**It is so ordered** this 11th day of February, 2015.

Sam A. Lindsay
United States District Judge

---

[11] Sonya Cole asserts that Marone never even filed an administrative tort claim with the BOP.  Def.'s Mot. to Dismiss, App. 1-2, Ex. 2. Nonetheless, even assuming he filed a claim at the earliest possible time, the same day he was placed in administrative custody, he still would have needed to wait for a final denial or a deemed denial.  As he never received a final denial and he filed his complaint without waiting the requisite 6 months for a deemed denial, the court lacks jurisdiction to hear his claim.